WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE Mortgage Electronic Registration Systems (MERS) Litigation<br>MDL 09-2119-PHX-JAT<br>_____<br><br>Juanita Faye Pualani Lee, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>Mortgage Electronic Registration Systems, Inc., et al.,<br><br>        Defendants.<br>_____ | CV 11-00173-PHX-JAT<br><br>**ORDER** |

Pending before the Court are Defendant Countrywide Bank, FSB's Motion to Dismiss (MDL 09-2119, Doc. 1616) and Defendant Mortgage Electronic Systems Inc.'s Motion to Dismiss (MDL 09-2119, Doc. 1627). The Court now rules on the Motions.

**I.     FACTUAL BACKGROUND**

On or about July 25, 2007, Plaintiff executed a promissory note in the amount of $728,000,000, in connection with a loan from Aegis Wholesale Corporation ("Aegis"). (CV 11-173, Doc. 1-1 at 5, 14). The promissory note was secured by a Mortgage recorded against the property located at 954 Alewa Drive, Honolulu, Hawai'i 96817 (the "Property"). (*Id.*). MERS, as nominee for Aegis, was named the beneficiary under the Mortgage. (*Id.* at 5, 22).

Based on Plaintiff's default on loan payments, on December 18, 2008, MERS, as nominee for Aegis, noticed a sale of the Property to take place on February 9, 2009. (*Id.* at

5, 39).  Plaintiff alleges that the Notice of Sale was defective because: (1) Jason Cotton, who signed the Notice of Sale, as Assistant Secretary of MERS was not the Assistant Secretary of MERS and his signature on the Notice of Sale was falsely notarized by Hillary Cotton, who had full knowledge that Jason Cotton was not the Assistant Secretary of MERS.  (*Id.* at 5); (2) MERS has no legal or beneficial interest in the Property as nominee under the Mortgage and has no authority to sell the Property.  (*Id.*); (3) Aegis was in bankruptcy at the time of the sale, which terminated all prepetition rights of nominees, such as MERS.  (*Id.*).; and (4) the Notice unlawfully instructed prospective bidders that the successful bidder must deposit the full amount of the purchase price within twenty-one days of the auction in order to be able to close within thirty days of the auction.  (*Id.* at 5-6).

On March 6, 2009, MERS, as Grantor, transferred the Property to CW, as Grantee, by a Quitclaim Deed.  Plaintiff alleges that the Quitclaim Deed was defective because Kevin A. Durham, who signed as Assistant Secretary of MERS, was not the Assistant Secretary of MERS and the Quitclaim Deed was falsely notarized.  (*Id.* at 6).

When Plaintiff refused to vacate the Property, CW filed a formal Complaint for Ejectment.  (*Id.* at 6-7).  After securing an interim Writ of Ejectment and taking possession of the Property, CW dismissed the action without prejudice.  (*Id.* at 7).  Plaintiff alleges that, at the time of the sale, the Property had a market value of $704,000, but was sold for $560,000.  (*Id.*).

Plaintiff alleges wrongful foreclosure (Count One) and unfair and deceptive acts and practices in violation of Hawai'i Revised Statutes sections 667-5, 667-5.7, 480-13, and 480-13.5 (Count Three).  As relief, Plaintiff seeks injunctive relief (Count Four), punitive damages (Count Five), and an accounting by MERS and Countrywide of all monies collected and taken as a result of unlawful judicial foreclosures (Count Six).  (*Id.* at 7-10).

## II.    PROCEDURAL BACKGROUND

In October 2010, Plaintiff Juanita Faye Pualani Lee ("Plaintiff" or "Lee") filed a Class

Action Complaint against Mortgage Electronic Systems, Inc. ("MERS") and Countrywide Bank, FSB ("Countrywide") in the Circuit Court of the First Circuit of Hawai'i. (CV 11-173, Doc. 1-1).  MERS removed the suit to the United States District Court for the District of Hawai'i.  (MDL 09-2119, Doc. 1616 at 3).  In January 2011, the Judicial Panel on Multidistrict Litigation transferred the lawsuit to this Court for inclusion in the MERS Multidistrict Litigation.  (*Id.*).  In October 2011, this Court remanded Count Two and part of Count Six of Plaintiff's Complaint to the District of Hawai'i because those claims did not turn on the formation or operation of MERS.  (MDL 09-2119, Doc. 1601).  Defendants Countrywide and MERS (collectively "Defendants")[1] now move to dismiss the remaining Counts of Plaintiff's Complaint.[2]

### III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8.  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level.  *Id.*

Rule 8's pleading standard demands more than "an unadorned, the-defendant-

---

[1] Although Countrywide and MERS have filed separate motions to dismiss, the majority of their arguments overlap.  Accordingly, the Court will only distinguish between the Defendants' arguments if there is an argument that does not apply to all Defendants.

[2] This Court retains jurisdiction over Counts One, Three, Four, Five, and part of Count Six. (MDL 09-2119, Doc. 1601).

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than blanket assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Id.* Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in a complaint in the light most favorable to the drafter of the complaint, and the Court must accept all well-pleaded factual allegations as true. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation, *Papasan*, 478 U.S. at 286, or an allegation that contradicts facts that may be judicially noticed by the Court, *Shwarz*, 234 F.3d at 435.

### IV.   ANALYSIS

In their Motions to Dismiss,[3] Defendants argue that all Counts of Plaintiff's Complaint

---

[3] Plaintiff's Response to Defendant Countrywide's Motion to Dismiss was due by November 4, 2011. On November 15, 2011, Plaintiff moved for an extension of time to file her Response (Doc. 1650). On November 30, 2011, Plaintiff filed her Response. Countrywide argues that pursuant to LRCiv 7.2(i), Plaintiff's failure to timely file her Response should be deemed consent to granting the Motion to Dismiss. Plaintiff argues that her Counsel failed to familiarize himself with the Local Rules in the District of Arizona and, thus, mistakenly calculated the Response time.

The Court will consider Plaintiff's Application to Modify the Briefing Schedule to be a Motion for Extension of Time pursuant to Federal Rules of Civil Procedure 6(b)(1)(B), which provides "the court may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect." Courts are "permitted to accept late filings caused by inadvertence, mistake, or carelessness, not just those caused by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 381 (1993).

"[T]he determination of whether neglect is excusable is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the

- 4 -

should be dismissed. In Response, Plaintiff acknowledges that the Counts in her Complaint for injunctive relief (Count Four), punitive damages (Count Five), and an accounting (Count Six) are purely subsidiary claims for relief that she alleges she is entitled to as a result of the wrongful foreclosure alleged in Count One and unfair and deceptive acts and practices in violation of Hawai'i Revised Statutes sections 667-5.7 alleged in Count Three. Because Plaintiff will only be entitled to the relief in Counts 4-6 if she is successful on Counts One and Three, the Court will determine whether Plaintiff has stated a claim upon which relief can be granted in Counts One and Three of her Complaint.[4]

Plaintiff alleges that she is entitled to reversal of the nonjudicial foreclosure of the Property because (1) the sale of the property was conducted in violation of Hawai'i Revised

---

delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223-1224 (9th Cir. 2000). In this case, Defendant will not suffer undue prejudice if the Court accepts the late filing and the delay has not unduly impacted the proceedings. Plaintiff's counsel's reason for delay–his failure to familiarize himself with the local rules, despite being required to certify that he will become familiar with the local rules in his application for pro hac vice –is difficult to understand; however, the Court does not find that Plaintiff's Counsel has acted in bad faith. Further, the Court finds that equity favors considering Countrywide's Motion to Dismiss on the merits. Accordingly, the Court will not deem Plaintiff's failure to timely respond to the Motion to Dismiss to be consent to granting the Motion to Dismiss pursuant to LRCiv. 7.2(i).

[4] The Court notes that in Response to the Motions to Dismiss, Plaintiff first argues that this Court should decline to rule on the Motions to Dismiss because, she argues, her claims have nothing to do with the multidistrict litigation. (Doc. 1657 at 2-4, 9). This appears to be a request that the Court reconsider its interpretation of the Judicial Panel on Multidistrict Litigation's Transfer Order. (Doc. 1601). As this Court noted in its previous Order discussing these issues, remands to the transferor court can only be affected by the Judicial Panel on Multidistrict Litigation. (Doc. 1601 at n.1).

Further, although Plaintiff contends that her claims are not related to this "largely esoteric multidistrict federal litigation" (Doc. 1657 at 2), the Panel clearly stated that it was transferring all claims that "the various participants in MERS formed a conspiracy to commit fraud and/or that security instruments are unenforceable or foreclosures are inappropriate due to MERS's presence as a party" or that otherwise concern the "formation and operation of MERS." (Doc. 1). Plaintiff admits that the two alleged wrongs in her complaint relate to MERS and Countrywide's unfair and deceptive trade practices, and claims that MERS and its agents fraudulently signed documents that resulted in the foreclosure of her home. As such, the claims clearly fall within the scope of the claims that are part of the multidistrict litigation. Although the claims necessarily require the Court to interpret issues relating to state law, such interpretation does not remove these claims from the scope of the multidistrict litigation. Accordingly, this Court will not reconsider its interpretation of the Judicial Panel's Transfer Order and will not decline to rule on motions properly made in this case.

Statutes section 667-5.7 and (2) MERS foreclosed on the property although it lacked standing to foreclose and fraudulently signed a quitclaim deed on behalf of Aegis Wholesale Corporation while Aegis was in bankruptcy.

### A.  Violations of Hawai'i Revised Statutes section 667-5.7

Plaintiff alleges that the notice of foreclosure that issued after she defaulted on her mortgage payment violated section 667-5.7 because it required the successful purchaser of the property to pay the full purchase price within 21 days of the public sale.

Section 667-5 provides, "At any public sale pursuant to section 667-5, the successful bidder at the public sale, as the purchaser, shall not be required to make a downpayment to the foreclosing mortgagee of more than ten per cent of the highest successful bid price." Haw. Rev. Stat. Ann. § 667-5.7.

Defendants argue that Plaintiff's claims related to violations of section 667-5.7 should be dismissed because the requirement to pay the full purchase price within 21 days of the public sale does not violate section 667-5.7's prohibition against requiring more than a 10% downpayment "at any public sale." Although the Hawai'i state courts do not appear to have addressed this issue directly, Defendants cite to various cases from the District Court of Hawai'i to support their argument that requiring full payment within 21 days of the public sale does not violate section 667-5.7.

In *Saiki v. LaSalle Bank Nat'l Ass'n*, No. 10-00085 JMS/LEK, 2011 WL 601139 (D. Haw. Feb. 10, 2011), the Hawai'i District Court considered a plaintiff's argument that Section 667-5.7 is violated when full payment is required within 21 days of public sale and held,

> This court has already interpreted § 667-5.7-in both *Gaspar v. Bank of Am., N.A.,* 2010 WL 4226466 (Oct. 18, 2010), and *Rundgren v. Bank of New York Mellon,* 2010 WL 4066878 (Oct. 14, 2010)-and rejected the argument Plaintiff now makes. Specifically, this court interpreted § 667-5.7 as creating no requirement limiting when, after the public sale, the mortgagee can demand payment of the balance of the bid price. The court came to this conclusion based on the plain language of the statute-the phrase "[a]t any public sale" acts as a temporal

- 6 -

> limitation and qualifies the words that follow, meaning that at the public sale, a mortgagee cannot require the successful bidder to pay more than a ten percent down payment. Although recognizing that the analysis could stop at this point, the court nonetheless considered the legislative history of § 667-5.7 to find additional support for its interpretation, and also rejected Plaintiff's policy argument on the basis that the court cannot rewrite the statute where the language is clear. *See Gaspar,* 2010 WL 4226466, at *4-6; *Rundgren,* 2010 WL 4066878, at *3-4.

*Saiki v. LaSalle Bank Nat'l Ass'n*, 2011 WL 601139, at * 5. This Court agrees with and adopts the *Saiki* court's reasoning. On its face, the statute clearly prohibits requiring more than a ten percent down payment at the public sale. To read a further limitation into the statute that a mortgagee cannot require the successful bidder to pay more than a 10% down payment at any time thereafter would add an additional clause to the statute that simply does not exist.[5]

Plaintiff disagrees with the Hawai'i District Court's interpretation of section 667-5.7 and argues that the legislative history of that section and public policy considerations support her interpretations of section 667-5.7. The Hawai'i District Court has also addressed Plaintiff's interpretations of section 667-5.7 and the legislative history of section 667-5.7 and has concluded that Plaintiff's arguments are without merit.[6] This Court agrees. Accordingly,

---

[5] Plaintiffs' reliance on *In re Kekauoha-Alisa*, 674 F.3d 1083 (9th Cir. 2012) for the proposition that Hawaii's nonjudicial foreclosure statutes should be strictly construed adds nothing to the Court's analysis because the Court is strictly construing the statute and simply refuses to read Plaintiff's additional requirements into the statute.

[6] *See Gaspar v. Bank of Am., N.A.*, No. 10-00323 JMS/BMK, 2010 WL 4226466, at * 5 (D. Haw. Oct. 18, 2010) ("The Senate Committee on Consumer Protection and Commerce expressly considered, and rejected including a provision outlining when a mortgagee could require full payment. Specifically, the Committee removed a provision providing that the balance of the successful bid price would be due within ninety days following the sale. *See* Senate Stand. Com. Rep. No. 3422, *available at* http://www.capitol.Hawai'i.gov/session2006/commreports/ hb3100_SD1_sscr3422_.htm. By deciding to delete this provision, it appears that the legislature intended to leave open when, after the auction, the mortgagee could demand full payment. . . . The court therefore finds that Plaintiffs cannot allege a violation of § 667-5 .7 based on Defendants' requirement that the successful bidder make full payment within twenty-one days after the auction."); *Rundgren v. Bank of New York Mellon*, No. 10-00252 JMS/LEK, 2010 WL 4066878, at *3-4 (D. Haw. Oct. 14, 2010) ("where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning. Instead, our sole duty is to give effect to the statute's plain and obvious meaning.") (internal quotations and citations omitted); *Saiki v. LaSalle Bank Nat'l Ass'n*, 2011 WL 601139, at * 5 ("As the court previously explained, the court rejects that § 667-5.7 is at all ambiguous-the initial

- 7 -

Plaintiff's claims relating to section 667-5.7 are dismissed for failure to state claims upon which relief can be granted.

### B. Claims Based on MERS's Standing to Foreclose

Plaintiff argues that the MERS could not initiate foreclosure proceedings on the Property because MERS lacked standing to do so. MERS, as nominee for Aegis, noticed the sale of the Property. In the Mortgage that Plaintiff signed, MERS, as nominee for Aegis, was listed as the beneficiary. Accordingly, Plaintiff specifically agreed to and was on notice that MERS held legal title to the secured interests on the Property. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1042 (9th Cir. 2011) ("By signing the deeds of trust, the plaintiffs agreed to the terms and were on notice of the contents").

To support her argument that MERS lacks standing to foreclose, Plaintiff cites to various cases where MERS was required to produce a promissory note for a property before it could initiate foreclosure proceedings on that property. Such a showing is often required in judicial foreclosures or by statute. Plaintiff does not cite to any authority in Hawai'i, nor is the Court aware of any such authority, that requires that MERS prove "standing," through the production of a promissory note or otherwise, before it could initiate non-judicial foreclosure proceedings on the Property.

Accordingly, Plaintiff has failed to state a claim upon which relief can be granted based on her assertion that MERS lacked standing to foreclose on the Property.

### C. Claims Based on MERS's allegedly Fraudulent Initiation of Foreclosure while Aegis was in Bankruptcy

Plaintiff next argues that MERS "illegally purported to exercise the real property rights of Aegis after Aegis filed bankruptcy and did so without the permission of Aegis'

---

prepositional phrase '[a]t any public sale' provides a temporal limitation, while the second reference to the 'public sale' in the phrase 'the successful bidder at the public sale' simply identifies who has won the auction. Further, the term 'down payment' is easily understood as the amount of money the successful bidder must pay at the auction.").

bankruptcy trustee, and without the approval of the federal bankruptcy court, constituting a criminal fraud upon the creditors of Aegis and a fraud upon the bankruptcy court," "and then recorded its bogus robo-signed assignment of mortgage at the Hawai'i State Bureau of Conveyances in violation of numerous state criminal and regulatory laws." (Doc. 1657 at 8). To the extent that the Court construes Plaintiff's claims relating to MERS's fraud on the bankruptcy court and violation of criminal statutes and regulatory laws as true, Plaintiff has failed to state any injury that is fairly traceable to these acts and, thus, lacks standing to assert these claims in this action.

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498 (1975). In resolving the issue of standing, courts are bound by a constitutionally imposed jurisdictional restraint in Article III of the United States Constitution, which limits the "judicial power" of the United States to the resolution of "cases" and "controversies." *See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.,* 454 U.S. 464, 470–71 (1982). Courts have viewed the constitutionally imposed restraint found in Article III as requiring that, in order to have standing, the plaintiff must have suffered an "injury in fact." *Id.* at 473. To satisfy Article III's standing requirements, Plaintiff bears the burden of proving that (1) he has suffered "'an injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged act of defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 180–81(2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).

In this case, after Plaintiff defaulted on her loan obligations, MERS noticed a sale of the property, as nominee for Aegis. Plaintiff alleges that Aegis was in bankruptcy and, thus, any property Aegis owned was property of the bankruptcy estate and Aegis's creditors.

Plaintiff appears to allege that MERS, as an agent for Aegis, was without authority to notice a sale of the Property because the Property belonged to the bankruptcy estate. At the outset, the Court notes that Plaintiff's claims that MERS was without authority to notice a sale of the Property are speculative. Any number of proceedings could have occurred in the bankruptcy case that would have allowed Aegis, and MERS, as Aegis's agent, to notice the sale of the Property.

Notwithstanding the speculative nature of these allegations, even if the bankruptcy Trustee was properly the party who should have noticed the sale to the Property, the Trustee of the bankruptcy estate, and not Plaintiff, would have suffered an injury that is traceable to MERS's "fraudulent notice of sale." If the bankruptcy Trustee, and not MERS, had noticed and proceeded with the sale of the Property, Plaintiff's alleged injury (the foreclosure of the Property) would still have occurred.

Because Plaintiff's allegations regarding MER's authority to notice the sale are speculative and Plaintiff has failed to allege how these allegedly fraudulent acts caused her injury or how the Court's decision on such claims could provide her relief in this action, Plaintiff lacks standing to assert MERS's alleged fraud on the bankruptcy court.[7]

## V. LEAVE TO AMEND

Plaintiff does not request leave to amend. However, the Ninth Circuit has instructed district courts to grant leave to amend when dismissing a case for failure to state a claim, "unless the court determines that the pleading could not possibly be cured by the allegations of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.1995)). Because Plaintiff's claims depend on legal theories

---

[7] Plaintiff cites to *Deutsche Bank Nat'l Trust Co. v. Williams*, Civil No. 11–00632 JMS/RLP, 2012 WL 1081174 (D. Haw. March 29, 2012) to support her standing argument. *Deutsche Bank* itself distinguishes the situation in that case from Plaintiff's situation. *See id.* at *5 (explaining that when lender is Plaintiff before the Court and seeks to have to Court declare the validity of a judicial foreclosure, lender must prove standing, but when lender is defending itself in an action, it need not establish standing) (internal quotations omitted).

- 10 -

that have repeatedly been rejected by the District Court of Arizona, the District Court of Hawai'i, and the Ninth Circuit Court of Appeals, and in light of the foregoing analysis, the Court finds that Plaintiff's Amended Complaint could not be cured by allegations of other facts and, thus, allowing Plaintiff to amend would be futile. Accordingly, the Court will not grant Plaintiff leave to amend.

## VI.   CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant Countrywide Bank, FSB's Motion to Dismiss (MDL 09-2119, Doc. 1616) is granted.

**IT IS FURTHER ORDERED** that Defendant Mortgage Electronic Systems Inc.'s Motion to Dismiss (MDL 09-2119, Doc. 1627) is granted.

The Clerk of the Court shall enter judgment for Defendants.

The Clerk of the Court shall file a copy of this Order in MDL 09-2119-PHX-JAT and CV 11-00173-PHX-JAT.

Dated this 25th day of May, 2012.

James A. Teilborg
United States District Judge